# EXHIBIT A

Return to:    MIDDLEBERG, RIDDLE & GIANNA
P.O. BOX 2285, SUITE 104
AUSTIN, TEXAS 78768

———————————————————— [Space Above This Line For Recording Data] ————————————————————

# DEED OF TRUST

FHA Case No.
███

MIN: 

THIS DEED OF TRUST ("Security Instrument") is made on the 26th day of July, 2001.
The grantor is SHAWN M. ALOSI AND WIFE, LINDSAY M. ALOSI

("Borrower").
The trustee is JOHN H. HARRIS, whose address is 1300 SOUTH MOPAC EXPRESSWAY, AUSTIN, TEXAS 78746
("Trustee").
The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. GUARANTY RESIDENTIAL LENDING, INC. ("Lender") is organized and existing under the laws of the State of NEVADA, and has an address of 1300 S. MOPAC EXPRESSWAY, AUSTIN, TEXAS 78746.
Borrower owes Lender the principal sum of **SIXTY-THREE THOUSAND THREE HUNDRED TWENTY-FOUR and NO/100-----Dollars (U.S. $ 63,324.00)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **August 1, 2031.**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in BELL County, Texas:

LOT TWELVE (12), IN BLOCK THREE (3), OF NOLANVILLE ESTATES, FIRST REPLAT, IN THE CITY OF NOLANVILLE, BELL COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN CABINET A, SLIDE 373-C, PLAT RECORDS OF BELL COUNTY, TEXAS.

VOL. 4452 PAGE 133

which has the address of 1411 ASHLEY DRIVE, [Street]  NOLANVILLE, [City]
TEXAS [State]  76559 [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**TEXAS FHA DEED OF TRUST**    10/95    (Page 1 of 5 Pages)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

VOL. 4452 PAGE 135

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate] The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed conveying Property to Borrower dated or effective the same date as this Security Instrument, which Vendor's Lien has been assigned to Lender, this Security Instrument being additional security therefor.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider  ☐ Growing Equity Rider

☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

☐ Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

...Lindsay M Alosi...........(Seal)            ...Shawn M. Alosi...........(Seal)
LINDSAY M. ALOSI —Borrower                   SHAWN M. ALOSI —Borrower

[Space Below This Line For Acknowledgment]

State of TEXAS            §
County of BELL            §

This instrument was acknowledged before me on the __27TH__ day of __JULY__, 20_01_, by SHAWN M. ALOSI AND LINDSAY M. ALOSI

ELLEN SHAFFER
Notary Public
STATE OF TEXAS
My Comm. Exp. 12/13/02

_____
Notary Public

_____
(Printed Name)

My commission expires:_____

VOL. 4452 PAGE 137

'01 AUG 1 PM 2 40
VADA STITTON
CNTY CLERK BELL CNTY TX
BY _____ DEPUTY

FILED FOR RECORD

025097

10/95           (Page 5 of 5 Pages)

MONTEITH ABSTRACT & TITLE CO.
2210 E. CENTRAL TEXAS EXPWY, SUITE 101
KILLEEN, TX 76543
(254) 526-7586

THE STATE OF TEXAS
COUNTY OF BELL

This is to certify that this document was FILED
and RECORDED in the Official Public Records
of Bell County, Texas on the date and time
stamped thereon.

COUNTY CLERK
BELL COUNTY TEXAS

# EXHIBIT B

Doc-38767 Bk-OR Vl-9080 Pg-630

Prepared by: Gina Herman / AB
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

## TRANSFER OF LIEN
## TEXAS

This **TRANSFER OF LIEN** from **GMAC MORTGAGE, LLC**, whose address is c/o Ocwen Loan Servicing, LLC., 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to **OCWEN LOAN SERVICING, LLC** whose address is 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For the sum of ten dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, convey, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest owned or held by said Assignor in and to the following instrument describing land therein, duly recorded in the Official Public Records of Real Property/Mortgage/Deed of Trust Records of **BELL** County, State of **TEXAS**, described as follows:

Mortgagor/Trustor: **SHAWN M. ALOSI AND LINDSAY M. ALOSI**
Mortgagee/Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR GUARANTY RESIDENTIAL LENDING, INC.**
Trustee: **JOHN H. HARRIS**
Document Date: **JULY 26, 2001**
Amount: **$ 63,324.00**
Date Recorded: **AUGUST 01, 2001**
Book/Volume/Docket/Liber: **4452**
Page/Folio: **133**
Instrument : **025097**
Property Address: **1411 ASHLEY DRIVE, NOLANVILLE, TX 76559**

This Assignment is made without recourse, representation or warranty.
DATED: _____SEP 2 6 2014_____

**GMAC MORTGAGE, LLC**
**BY ITS ATTORNEY IN FACT**
**OCWEN LOAN SERVICING, LLC**

BY: _____
NAME: **Vicki Pospisil**
TITLE: Authorized Signer

STATE OF IOWA      )
                   )SS.
COUNTY OF BLACK HAWK )

The foregoing instrument was acknowledged before me on this **26th** day of **September**, 2014 by **Vicki Pospisil** Authorized Signer at **OCWEN LOAN SERVICING, LLC ATTORNEY IN FACT FOR GMAC MORTGAGE, LLC**, on behalf of the company. **Vicki Pospisil** is personally known to me.
Witness my hand and official seal.

_Karen Smith_
Notary Signature –

**Karen Smith**



KAREN SMITH
COMMISSION NO.794540
MY COMMISSION EXPIRES
JUNE 10, 2017

Doc-38767 Bk-OR Vl-9080 Pg-631

APN #: 012221-5-001
Prepared by: Gina Herman /AB
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MERS Ph.#: (888) 679 – 6377
MIN#: ▮▮▮▮▮▮▮▮▮▮

## WASHINGTON
## ASSIGNMENT OF DEED OF TRUST

This **ASSIGNMENT OF DEED OF TRUST** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")**, as designated nominee for ALLY BANK CORP. F/K/A GMAC BANK, beneficiary of the security instrument, its successors and assigns, whose address is 1901 E Voorhees Street, Ste C, Danville, IL 61834, PO Box 2026 Flint, MI 48501-2026 ("Assignor) to **OCWEN LOAN SERVICING, LLC**, whose address is 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409, (Assignee) all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **PIERCE** County, State of **WASHINGTON**, as follows;

Dated **SEPTEMBER 14, 2010**, in the principal amount of $ **313,500.00**, executed by SUSAN M. SHRECK to **FIRST AMERICAN TITLE** as Trustee(s) and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR ALLY BANK CORP. F/K/A GMAC BANK** as Beneficiary, and filed of record on SEPTEMBER 29, 2010, at Instrument/Entry/Document Number:201009290896.

PREMISES DESCRIBED AS: [APN: 012221-5-001] in **PIERCE** County, WA and more completely described in **LEGAL DESCRIPTION**
LOT 1 OF PIERCE COUNTY SHORT PLAT NO. 76-32, ACCORDING TO PLAT RECORDED JANUARY 16, 1976 IN VOLUME 7 OF SHORT PLATS AT PAGE 2, IN PIERCE COUNTY, WASHINGTON. ABBRV LEGAL LOT 1, SHORT PLAT NO. 76-32, VOL 7, PG 2

Doc-38767  Bk-OR  Vl-9080  Pg-632

APN #: 012221-5-001
Prepared by: Gina Herman /AB
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MERS Ph.#: (888) 679 – 6377
MIN#: ▓▓▓▓▓▓▓▓▓▓▓

This Assignment is made without recourse, representation or warranty.

DATED: **SEP 2 6 2014**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. ("MERS"), AS DESIGNATED NOMINEE FOR
ALLY BANK CORP. F/K/A GMAC BANK, BENEFICIARY OF THE SECURITY
INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**

By: *[signature]*
Name: **BRANDY BERNS**
Title: Assistant Secretary

State of IOWA, County of BLACK HAWK)

On **SEP 2 6 2014**, before me **BRANDY BERNS**, the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS DESIGNATED NOMINEE FOR ALLY BANK CORP. F/K/A GMAC BANK, beneficiary of the security instrument, its successors and assigns, personally appeared, and being personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her respective authorized capacities as Assistant Secretary, and that by his/her signature on the instrument, the entity upon behalf of which the person acted, executed the instrument.

Notary – *[signature]* **Vicki Pospisil**

NOTARY STAMP

VICKI POSPISIL
COMMISSION NO.784538
MY COMMISSION EXPIRES
JUNE 10, 2017

Doc-38767  Bk-OR  Vl-9080  Pg-633

## \*\*\*\* Electronically Filed Document \*\*\*\*

## Bell County, Tx
## Shelley Coston
## County Clerk

Document Number: 2014-38767
Recorded As       : ERX-RECORDINGS

Recorded On:         October 21, 2014
Recorded At:         03:17:58 pm
Number of Pages:     4
Book-Vl/Pg:          Bk-OR   Vl-9080   Pg-630
Recording Fee:       $19.00

Parties:

       Direct- ALOSI SHAWN M

    Indirect- OCWEN LOAN SERVICING LLC

Receipt Number:      218406
Processed By:        Heather Ables

(Parties listed above are for Clerks reference only)

\*\*\*\*\*\*\*\*\*\*\*\* **THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Real Property Records in Bell County, Texas

Shelley Coston
Bell County Clerk

## Assignment of Deed of Trust

When Recorded Return To:  
Indecomm Global Services  
2925 Country Drive  
St. Paul, MN 55117

Prepared By:  
Victor Ortega  
2925 Country Drive  
St. Paul, MN 55117

Dated: **October 11, 2012**

MIN: ▮▮▮▮▮▮▮▮▮  
MERS Phone: 888-679-6377

For value received **Mortgage Electronic Registration Systems, Inc., as nominee for Guaranty Residential Lending, Inc., its successors and assigns**, P.O. Box 2026, Flint, MI 48501-2026, the undersigned hereby grants, assigns and transfers to **GMAC Mortgage, LLC, 1100 Virginia Drive, Fort Washington, PA 19034**, all beneficial interest under a certain Deed of Trust dated **July 26, 2001** executed by **SHAWN M. ALOSI AND LINDSAY M ALOSI** and recorded in Book **4452** on Page(s) **133** as Document Number **025097** on **August 1, 2001 in the office of the County Clerk of Bell County, Texas**

MORTGAGE AMOUNT: **$63,324.00**

By: _[signature]_  
Mortgage Electronic Registration Systems, Inc., as nominee for Guaranty Residential Lending, Inc., its successors and assigns  
**Donna Kurzhal,**  
**Assistant Secretary**

STATE OF **Minnesota**  
COUNTY **Ramsey**  ) SS

*U02689631*

On October 11, 2012 before me, **Mary Xiong**, Notary Public in and for said State personally appeared **Donna Kurzhal**, **Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc.**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Mary Xiong, Notary Public  
My Commission expires: January 31, 2016

**MARY XIONG**  
Notary Public-Minnesota  
My Commission Expires Jan 31, 2016

Doc-42795  Bk-OR  Vl-8332  Pg-22

## \*\*\*\* Electronically Filed Document \*\*\*\*

## Bell County, Tx
## Shelley Coston
## County Clerk

Document Number: 2012-42795
Recorded As       : ERX-RECORDINGS

Recorded On:        October 15, 2012
Recorded At:        01:30:17 pm
Number of Pages:    2
Book-Vl/Pg:         Bk-OR  Vl-8332  Pg-21
Recording Fee:      $11.00

Parties:

      Direct- MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN
      Indirect- GMAC MORTGAGE LLC

Receipt Number:     150682
Processed By:       Melissa Yoder

(Parties listed above are for Clerks reference only)

\*\*\*\*\*\*\*\*\*\*\*\* **THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Real Property Records in Bell County, Texas

**Shelley Coston**
**Bell County Clerk**    *Shelley Coston*